Case number 15-1912. United States of America v. Scott Lynn Dillard. Mr., let's see, arguments not to exceed 15 minutes per side and Mr. Brant for the appellant. You may proceed. Thank you. Good morning. May it please the court I've asked to reserve four minutes for rebuttal. Excuse me. Mr. Dillard was firearms having or knowing or having reasonable cause to believe the firearms were stolen. Excuse me. Mr. Dillard asked the court to look carefully at the timeline. The development of what the government asked to present, what the district court authorized the government to present, how the government gave its own limitations, conditions, precedent, and how far it would go into questioning and compare that to what was actually presented at trial. The government's trial brief said it would seek to introduce testimony that if Dillard's defense was all I ever did, Mr. Travis Robinson, their star witness, was do benign non-criminal activities with Mr. Dillard, they thought the government presented there would be a criminal association relevance. So if Dillard had a particular defense, it would be relevant to show that Mr. Robinson and Mr. Dillard committed crimes together. That was the government's theory. The district court responds by not saying yes, it's okay to go into the crimes of stealing together. Instead, what the court says is it described as admissible situations where Mr. Robinson stole items of value, and it goes on to describe some of them. And then back to the quote, and that he then would bring them to Mr. Dillard to help move these items into cash. That is, in my mind, clearly a legitimate 404B purpose. That's page ID number 1143. That's not evidence of stealing together. The government responds by saying, okay, we will limit our questioning to, quote, why did you trust this person? That's page ID 1141. Quote, I think that probably would get me to where I think I'm allowed to go. But that's not what ended up happening at trial. At trial, the Mr. Robinson, if I can find that quote, my apologies, what type... Oh, how did you know Mr. Dillard? His answer is, quote, because we've stolen things together before. That's page ID 637. And the government didn't stop, as it had suggested it would, by asking that question and getting out, even though the response isn't limited to Travis Robinson stole things and brought them to Dillard. It's instead, we committed crimes together. The government didn't stop. It said, well, what types of things have you stolen with the defendant? So Mr. Robinson gets to talk about dirt bikes and scrap metal and copper. Was the I can find the page ID for the original objection. But isn't the key at trial? I'm sorry? Isn't the key what happened at trial? I would submit that because there's a little bit of a change in the testimony, that an objection here would have been better. I don't know if trial counsel was simply relying on the two earlier objections, both to the trial brief and then at the pretrial hearing, saying, I object to that evidence coming in. It would have been better to have an objection here. It sounds to me like the district judge was allowing its admissibility to prove a common scheme or plan, and that is permissible under 404B, is it not? It is, but I think, I read what the district court judge has granted as not being that, the crime itself. And when the judge gave the... Crime itself, what do you mean? How can you show a plan or a scheme without showing what the prior crimes were about? Because if the testimony was as the district court described, Mr. Robinson stole something, and then the scheme is, once Mr. Robinson steals, he brings to Mr. Dillard to help unload. That's a common scheme or plan. That's admissible. That's the prejudicial value there is so low. What the district court said, sure, go ahead and allow that to be Mr. Dillard committed crimes, therefore he's a criminal and acts in conformity therewith, and that's the danger. So if the district court is saying... You're saying the evidence came in that was broader than the scheme or plan that the district court allowed, but then there was no objection to the fact the testimony was broader than the ruling. That's correct. What was... Oh, I'm sorry. So we review for the defense was, I didn't know these things were stolen. That's correct. I did not know they were stolen. Well, isn't the fact that they had disposed of stolen goods before relevant to his knowledge that what he was dealing with here was also stolen? Yes, and that's what the district court authorized. That's not the same as... Well, wouldn't it still be admissible to prove knowledge that those were stolen goods? We don't have to, you know, if we can come up with a good reason for letting it in, we're not bound by what the district court let it in on. That's correct, Your Honor, but I think then we have to go back and do the 403 balancing on different... Well, you know, I, the thing that got me here, frankly, that I think is difficult for you to overcome, I don't know anything about MP5 machine guns, but I'm given to understand that they are not sold in your local gun shops, and they're worth about $30,000, and what happened here is, it's clear, was not an equal deal. I mean, it wasn't sold as if it might have been a legitimate possession, if you see what I mean. Yeah, and the jury was in the position to judge credibility and decide, based upon fair and not unfairly prejudicial evidence, whether that type of circumstance meant that Mr. Dillard necessarily knew they were stolen. That was up for the jury to decide, but when we have testimony before the jury that someone's the jury makes up their mind in a millisecond, hearing... But you and I just agreed that that would be relevant to his knowledge of whether it was stolen goods or not. Correct. All right, thank you. I see that I'm into my rebuttal time. Thank you. Thank you. Sorry, the clock was not correct. You can go on. Oh. Sorry. I looked down and saw yellow. Yes. You're better than most lawyers. Ignore it totally. Yeah, well, when you've got these glasses to help... Turning to sentencing, we've appealed the district court's ruling that Dillard was not a prohibited... that he was a prohibited person. When it came to the judge trying to decide whether Mr. Dillard's a prohibited person, when it came to that prior conviction, I don't know that we have Sixth Circuit direction here, and I think that's why the district court judge turned to the Seventh Circuit and the Lee case. But turning to Lee is misguided. Lee has no connection to this case on material facts. Lee is an easy case to decide. Who could argue with Lee? Yes, if you're a felon at the time you commit the offense, and right before you go to trial, you get it expunged, that does not change that you were a felon at the time you The hard question is, if a defendant is in a plea deal where the terms of the plea deal accepted by the trial judge are, if you successfully complete probation, you will be adjudged as committed a misdemeanor. That is in writing. The problem is, when the clerk enters the judgment, the clerk forgets to Was he as a matter of law, then, a felon at the time of committing the offenses, and therefore gets a two-level increase under 2K1.2? We submit Lee does not say otherwise, and that the answer is no, he was not a felon. Assuming that you're right on that, is there not another problem for your client that he admitted drug use, and that that would qualify him as a prohibited person? That's what my notes say, my next point should be. Yes, but the question is, can we find a Sixth Circuit case that says this admission is enough? What about Jarman? Yes, Jarman's a good case that Judge Moore was on the panel. I don't think you authored that one too, yes. Yes, I would say that there's a difference between someone admitting to the probation officer an unsworn statement without your attorney of regular use with admitted periods of abstinence. Does that rise to a preponderance of the evidence? And we submit that it's not the same, and that it does not. Did the statement by your client to regular use with periods of abstinence, did it specify when the abstinence was? My memory is that it was when he was trying to complete periods of probation and comply with court orders. But I'm getting at the time that the possession of the abstinence was at the same time or not. No, unlike Jarman and unlike Clark, no, there were not those, the testimony didn't show, hey, it was during this period or this period. All we know is that this was years before when, he's making statements that many times over the course of years I've been abstinent, but I keep going back. But no, we have nothing to say to match that up with the time period for the two federal offenses. Thank you. Thank you, your honors. May it please the court, Jennifer McManus on behalf of the United States. I would like to begin first just on a factual issue concerning the 404B issue. My friend on the other side suggested that the testimony that came in was broader than what was allowed by the district court. And the part that was focused on earlier was the original admission colloquy with the district court as to the admission of the 404B evidence. But a few pages later on page ID 1154 to 1155, there is a clarification by the government as to the scope of the 404B evidence that it was asking to introduce. Based on the subsequent colloquy about other 404B evidence, there was concern that the district court might have been under a misapprehension as to what that evidence was going to be. So the government clarified, just so your honor is aware, the testimony that we anticipate will be elicited is both that Mr. Dillard participated in the thefts and participated in the subsequent sale of the stolen goods. The district court said on page ID 1154, I see, all right, you are saying we both had the common role in stealing it and moving it. The district court then went on and engaged again in the Rule 403 balancing and said, I understand now what you're saying, that it just it isn't just that Mr. Dillard had a role in moving the merchandise, but he also had a role in stealing it. And the district court said, as long as Robinson says the goal was to steal to sell for value, the fact that he would also say Dillard was involved in the theft may make it a less neat fit, but still I think within the overall theory of the case. The court was very clear in saying that I'm permitting that evidence and I'm permitting it for the purpose of showing that there was this common scheme and it went directly to show Mr. Dillard's knowledge that the merchandise he was moving this time, as in the prior thefts, was in fact stolen. So then there wouldn't be any need for the defendant to object at trial if this had already been ruled on in the pretrial hearing? That's correct, because the evidence was the same that was permitted to the extent that the defense had a concern or objection to, for example, the form of the limiting instruction that was given, that needed to be made at trial. That was never made below and hasn't been argued on appeal. But the evidence that was permitted was the evidence that was brought in. It was very limited, very much not prejudicial in the larger scheme of the case, and we submit there was no error in its dealing property before, but you're just saying it's not unfairly prejudicial. That's correct, it's not unfairly prejudicial. And I think actually in the scheme of 404B evidence that the courts permit, it actually wasn't very highly prejudicial here, because the kind of thefts that were occurring were thefts of some scrap metal, some dirt bikes. It did not necessarily lead to the inference that we're concerned about with 404B evidence that this person has a bad character or has a propensity to commit crime because he's engaged in these bad activities before. It was a very limited amount of testimony about the fact that he'd stolen some scrap metal with this guy before. I don't think it was very prejudicial and it certainly was not unfairly prejudicial. And unless the court has any other questions on the Rule 404B issue, I'll just turn to the sentencing issue then. The prohibited person two level enhancement was properly applied, really on both bases. I think there's more question about the fundamental fairness of applying it in terms of on the basis that the defendant was a convicted felon on the date that he possessed the firearms. It was an error in our view for the court to apply it for that purpose. The court's decision, the Seventh Circuit's decision in Lee is not on all circumstance, but it is helpful. It's helpful in the sense that the guideline enhancement is intended to apply where there's a concern that somebody is possessing these very bad firearms, the ones that have to be registered or are listed in the statute. And there is some serious question about whether these people should be having this, should be in possession of these serious weapons. It is therefore not unfair to require that a person who is going to be possessing these weapons make sure that they are not a prohibited person before they possess them. So in this circumstance, there's no dispute that the defendant was in fact convicted of a felony at the time that he possessed the firearms. Whether or not that disability should have been removed is an open question. The district court... I thought that the facts were that he had completed probation and that that meant that this was no longer to be treated as a felony, but was to be treated as a misdemeanor and that the only thing that hadn't happened yet was the correction of the record. Am I wrong on that understanding of the facts? I think it's a fair inference that that is in fact what happened. Based on the records that were provided to the district court the day before the sentencing hearing, the district court was provided with the order that was amending the conviction. The district court was not provided with the original discharge from probation order. Presumably it said, as it said in the pre-sentence report, that Mr. Dillard successfully completed his probation. And presumably there was just an error in that the court had not actually reduced that to a misdemeanor. Either there was an error in the discharge order, which should have done that, or there needed to be some further action that wasn't taken. I think that is a fair reading of what happened. So then how can we say that he was a felon if under Michigan law he wasn't a felon except for the fact that there hadn't been this clerical correction? Based on the records that were provided, there needs to be... There needed to be some further action taken. The discharge and probation order had to be amended. It wasn't amended. But the state court never amended it? It eventually did, just before sentencing. But originally... And it's not clear to me if they were supposed to do that and didn't do that and it was truly a clerical error or if some further action needed to be taken for them to do that. At time of sentencing in this case, had the error been corrected? Yes. Yes. A few days before the sentencing hearing in this case, it was amended. So at the time of sentencing, under Michigan law, he wasn't a felon? At the time of sentencing, correct. But the time frame that's important in our view for purposes of that enhancement is the time period in which he possessed the prohibited items. Oh, I see. Okay. So it's kind of unusual because we... Time of the crime. That's correct. So there's no question that the order hadn't been amended as of that date. But there is some question about whether it should have been. And we acknowledged that and we did in the district court. And we said, you know what? Maybe not apply it on that basis. It's not clear to us that it applies. But the district court disagreed and it... He could have petitioned the state court to file the right paperwork to have it reduced to the misdemeanor? Yes. And that's... He hadn't done it. Yes. And that's what he ultimately did. At the time of the crime in Michigan, he was classified as a felon even though he could have had it reduced to a misdemeanor. And if the procedures had gone through as they were supposed to, he would have been. Is that... That's correct, Your Honor. That's, as best we can tell, a correct statement of where things lie. And then the district court's view, it was the removed before he possessed these firearms. But moving on, because the district court did have an alternative basis for applying the enhancement, and that was that he was a regular drug user. What... And I'm really concerned about this aspect. What is the evidence in the record that he was a regular drug user that could be relied on by the district court? In the presentence report on page ID 1023, Mr. Dillard admitted that he... And I will get the language exact here. Okay. Or maybe I will just summarize it. No, that's okay. I got it. Okay. I'm sorry. So, on page ID 1023, in paragraph 62, Mr. Dillard said that he first smoked marijuana at the age of 14, and he routinely used it three or four times a week until his arrest for the instant offense. The defendant noted there were brief periods he was able to abstain... Brief periods. He was able to abstain while on probation. However, his use of marijuana has been rather consistent for the past decade. And did he contest this paragraph in the PSR at all? He did not contest that paragraph. To be fair, the defendant didn't know that the district court was going to rely on this alternative basis until the time of sentencing, and there were some objections to using this, generally, but there was no factual objection to the fact that he was a regular marijuana user. Additionally, in the pre-sentence report, in paragraphs 39 and 41, it reflects that he has two misdemeanor convictions for possession of marijuana that essentially sandwiched the offense conduct in this case, one in 2008 and one in 2014, with the offense conduct occurring in this case in 2013. There is also even a reference, and this is less clearly reliable in this context, but frankly, all of the people involved in the offense conduct were smoking marijuana while they were handling these guns during the offense conduct. Including this defendant? Now, I want to be clear that there's not real clear record evidence on that, but it was discussed in the context of the Rule 404B colloquy, so for example, on page 1156 of the record, there's reference to that, and the government is saying, look, we're not going to go into that because we have a concern that that would be unfairly prejudicial 404B evidence. And I'm only mentioning it because I think, given the record as a whole, there really was no good faith basis for this defendant to contest that he was a regular user of marijuana at the time that this offense conduct occurred. Is it enough to get the enhancement that you're a regular user, or do you have to be using at the time of the offense of conviction? That's a good question. I think that the enhancement is framed in terms of being a prohibited person, and a prohibited person is a drug user. So I think a regular drug user is someone we don't want handling these bad guns, and that's the concern that underlies the enhancement. So my understanding is that this defendant was not found to be in possession of drugs when he was arrested for the offense, and did not test positive for drugs. Am I correct on those things, and are those relevant? I believe you are correct on that. I don't know if he was tested or not offhand, but I don't have any reason to believe he tested positive if he was tested. And no, I don't believe that that actually, in the end, matters, because I think what does matter is that he was a regular user of drugs at the time that he was handling these weapons. So somebody who, when you point us to paragraph 61, who routinely used marijuana three or four times a week, that would be enough? Yes. Under your definition of prohibited person? It would be enough, and because, again, the concern underlying the enhancement is that there are certain classes of people for whom it is worse that they possess these firearms, and particularly these bad firearms, and the classes of people include convicted felons and include people who are generally using drugs. Thank you. Unless the panel has other questions, I'll sit down. Thank you. Thank you. Going in reverse order, at guideline section 2K2.1, application note 3, although I don't have 18 U.S.C. 1922G in front of me, that is a good place for your honors and your clerks to go directly for the definition of prohibited person. And I think that while the government would submit that routinely used three or four times a week would be enough, that's not actually what we have here, because we've got the caveat that there are periods, brief periods. What does that mean? Is a brief period a month for a regular user, three months? We don't know. This is an unsworn statement without an attorney, and there are brief periods where he was able to abstain. We can't say that the testimony is not testimony. The statement is that he's using three or four times a week, because we have those periods in between. Dillard was unaware of the mistake when it came to the clerk failing to put in the amended order. It's not that Dillard finished probation and then had a job where it was his responsibility or his attorney's responsibility to petition. Instead, it was his job to complete probation successfully. He did. The court did the right thing by entering the amended order way before these offenses. But somebody made a mistake, not Dillard. And the government says, in the record, I don't have this site offhand, but not by his own hand or a phrase like that at sentencing. Someone at the clerk's office or the judge fails to put in that amended order. And oh, by the way, in addition to all these things that have been changed, it's now a misdemeanor. He was unaware of that mistake. In Michigan, the court speaks through its orders, and an action is not effective until a written order is entered. So even if an order should have been entered or intended to be entered or whatever this, it is not effective until it is, in fact, entered. That's what the law in Michigan is. That's true, Your Honor. But I guess I bring this up as a point that it's not that Mr. Dillard needed to petition. Right. I agree with you. You can't get around the fact that the order hasn't been entered. But we just submit that a clerical mistake and ask for direction from the Sixth Circuit on this issue, because Lee doesn't answer it. And Lee is, of course, the Seventh Circuit. I would say to the question of prejudice and the balance, the probative value here is particularly lower when the evidence was not necessary, when the government had other ways to try to show Dillard knew the guns were stolen. And we list several of them in the brief. If you don't need to say he committed some sort of crime, why say it when the prejudicial value of saying somebody has committed a crime before sitting in front of this jury is so high? And finally, I'd ask the court to compare what the government has pointed to at page ID 11-5455 as whether that really is a clear ruling compared to what the court had said three or four pages earlier on whether the evidence of the crime was admissible. And once the balancing between the probative value and the risk of unfair prejudicial inference against the defendant, whether that meant, yes, we're fully supporting allowing the jury to hear that he had committed crimes. Thank you. Thank you. The case will be submitted.